KENTZLER, by guardian *ad litem*, Respondent, vs. THE AMERICAN MUTUAL ACCIDENT ASSOCIATION OF OSHKOSH, WISCONSIN, Appellant.

*October 26 — November 13, 1894.*

*Accident insurance: Notice and proofs of death: "Immediately."*

An accident policy provided that notice of any claim should be given *immediately* after the accident occurred; that proof of death, in like manner and time, should be verified by the attending physician or some other person having personal knowledge of the fact; that unless positive proof of death or injury should be furnished within six months of the date of the accident all claims should be forfeited; and that the insurance should not cover disappearances. The insured, a tugboat engineer, disappeared November 9, 1892. Shortly after, the bay in which the boat lay was frozen over, and on April 19, 1893, when the ice broke up, his body was found in the bay near the boat. Search was immediately made for his daughter, the beneficiary in the policy, who lived in another state, but she did not learn of her father's death until May 24, 1893, when she at once

Kentzler vs. The American Mutual Accident Ass'n of Oshkosh, Wis.

gave notice thereof to the company, and on July 12, 1893, furnished proofs of death. *Held*, that there was a sufficient compliance with the requirements of the policy. The word "immediately" is construed to mean such convenient time as was reasonably requisite for giving the notice after discovery of the death; and the proofs were to be furnished within the six months specified after such discovery.

APPEAL from the Circuit Court for *Ashland* County.

About 1886 the parents of the plaintiff, *Emma Kentzler*, had separated at or near Detroit, Mich., and always thereafter continued to live separate. *Emma* and her mother remained in Michigan, but her father, Joseph Kentzler, went to Ashland in this state, and in 1892 he was employed as an engineer of a tugboat operated by the Ashland Brown Stone Company on Chequamegon Bay, under Capt. John Herbert, who, with the engineer, fireman, and steward, made up the crew, and all lived and slept on the tug. On September 20, 1892, the said Joseph Kentzler became a member of the defendant association, and obtained from it a certificate of membership, containing, among other things, the following:

"*The American Mutual Accident Association of Oshkosh, Wisconsin*, in consideration of the membership fee and the warranties and agreements contained in his application for membership, hereby accepts Joseph Kentzler, of Ashland, Wisconsin, being a stationary engineer, under classification 'C,' and insures him against injuries through external, violent, and accidental means for five years, subject to its by-laws, in a manner and upon the conditions following: . . . (5) Or if such injury shall cause the death of such member within ninety days, will pay $1,500 to *Emma Kentzler*, daughter, or, in event of her prior death, to the legal representative of such member.

"The conditions upon which this certificate is issued and accepted by the insured member are as follows: . . . 2. That notice in writing of any claim made shall be given

the secretary of the association, at Oshkosh, Wisconsin, with
full particulars of the accident and injury, immediately
after the accident occurs.   Proof of death, in like manner
and time, shall be verified by the attending physician or
some other person having personal knowledge of the fact;
and unless positive proof of death or injury and duration
of disability, and that the same resulted from bodily in-
juries covered by this insurance, shall be furnished to the
association within six months of the date of the accident,
then all claims thereon shall be forfeited.   All claims shall
be subject to proof of insurable interest, and payable within
ninety days after proof of the injury. . . . 6. . . .
No proceedings at law or in equity shall be brought, or ar-
bitration required, to recover any sum hereunder, unless
the same is commenced within one year from the date of
the alleged injury. . . . 8.  The provisions and con-
ditions herein, and those of the application herefor, are
precedent to the issuing of this certificate and its validity.
. . . 9.  This insurance does not cover disappearances,
nor injuries of which there is no visible mark upon the
body, nor death nor injury resulting wholly or in part,
directly or indirectly, from any of the following causes:
[Causes specified, none of which were present here.]"

On the same day said certificate was issued, the said
Joseph Kentzler delivered the same to the said Capt. Her-
bert.

On November 9, 1892, the tug lay next to a scow in the
bay at Ashland.   In going onto the tug persons stepped
from the scow to the tug without any plank or walk, and
without any difficulty.   About 11 o'clock in the evening
of that day the said Joseph Kentzler was last seen at the
St. Charles Hotel at Ashland, and started from there, ap-
parently to go to said tug.   He was missed the next morn-
ing, and search made for him without avail.   There was no
ice in the bay at the time.   A couple of days afterwards

the captain made a trip with the tug, but returned November 12 or 13, 1892, and placed the tug in the same place, next to the scow. On April 19, 1893, the ice in the bay broke up, and the body of said Joseph Kentzler was found in the bay between the tug and the scow. Search was immediately instituted for the said *Emma* by advertising in the Detroit papers, and making inquiries by letter of numerous officers and persons in Michigan. In the early part of May, 1893, it was ascertained that she was in New Haven, Mich. She did not learn of her father's death until May 24, 1893, when she received information of the same at New Haven, Mich. Thereupon she immediately notified the secretary of the defendant of her father's death. The defendant received such notice May 26, 1893. On July 12, 1893, *Emma* duly served and delivered to the defendant's secretary, at Oshkosh, proofs of her father's death, as prescribed in the policy, and demanded payment thereon. On October 28, 1893, through her guardian *ad litem*, Nechtges, she commenced this action to recover the amount of such insurance.

The complaint contains allegations of the facts stated, in the usual form. The defendant answered by way of admissions and denials, and, among other things, alleged that the plaintiff did not give immediate notice of the injuries causing the death of the insured, nor give proof of death, as required by the terms of the contract; that on or about July 14, 1893, the defendant received by mail what purported to be proofs of death of the insured, and notice of the fact that he had been drowned; but that said papers were returned with the following indorsement: "These papers returned, not served within the time required by the contract. W. B. HOBART, Secretary."

At the close of the trial the court refused to grant a nonsuit or to direct a verdict in favor of the defendant; and thereupon the jury, by the direction of the court, re-

turned a verdict in favor of the plaintiff, and assessed her damages at $1,500, with interest from October 12, 1893. From the judgment entered thereon, the defendant appeals.

*M. C. Phillips,* for the appellant, to the point that the sudden character of the death, occurring at night and unknown to any one, and resulting in instantaneous death, was not a legal excuse for not giving the proofs within the provisions of the certificate, cited *Gamble v. Acc. Ass. Co.* Ir. Rep. 4 C. L. 204; *Patton v. Employer's L. Ass. Corp.* L. R. 20 Ir. 93; May, Ins. § 465; Cooke, Life Ins. § 115; *Blakeley v. Phœnix Ins. Co.* 20 Wis. 205.

For the respondent there was a brief by *Rossman & Foster,* and oral argument by *Geo. P. Rossman.* To the point that if a notice is given with due diligence and without unnecessary delay it will meet the requirements of the rule requiring "immediate" notice, they cited May, Ins. §§ 462, 465, 536; Cooke, Life Ins. § 115; *Ins. Co. of N. A. v. Brim,* 111 Ind. 282; *N. Y. Cent. Ins. Co. v. Nat. P. Ins. Co.* 20 Barb. 475.

CASSODAY, J.   It may be fairly inferred from the circumstances attending the disappearance of Mr. Kentzler on the evening of November 9, 1892, and the finding of his body in the water of the bay, April 19, 1893, as mentioned in the foregoing statement, that as he went from the hotel to the tug for the purpose of retiring, and while in the act of stepping from the scow to the tug, he accidentally fell between the two into the water below, and was drowned. He was at the time about forty-six years of of age, in good health, and apparently sober, although he had taken a drink of whisky while at the hotel, and it is said that he was in the habit occasionally of having a "spree." By the express terms of the contract, it did "not cover disappearances." This being so, it is very manifest that had notice of his dis-

appearance been given to the defendant's secretary November 10, 1892, and proofs of the circumstances under which he disappeared, with the suggestion that he had probably been drowned in the bay, been made out and sworn to and delivered to the secretary five months after Kentzler's disappearance, yet the defendant in all probability would have answered, in the language of the contract: "This insurance does not cover disappearances," and hence you have no claim against the association. Such was the contract,— that the defendant was subject to no liability "unless positive proof of death" was made within the time and in the manner prescribed in the certificate. But it was utterly impossible to make such proof or give such notice until the body was discovered and identified, April 19, 1893. That was nearly six months after Kentzler had, in all probability, lost his life. Up to the time of such discovery and identification, the beneficiary was in no default, and under no obligations to give such notice or furnish such proofs. But the contract expressly required notice to be given, "with full particulars of the accident and injury, *immediately* after the accident occurs." It also expressly required that "proof of death, *in like manner and time*, shall be verified by the attending physician or some other person having personal knowledge of the fact; and unless *positive* proof of death . . . shall be furnished to the association within six months of the date of the accident, then all claims thereon shall be *forfeited*."

A contract should not be construed so as to forfeit or render nugatory the rights of one of the parties to it, unless the language employed imperatively requires such construction. In other words, an interpretation which gives effect is preferred to one which makes void. Besides, a contract should be interpreted in view of the conditions necessarily implied by law. It is a maxim in the law that "all words, whether they be in deeds, or statutes, or other-

wise, if they be general, and not express and precise, shall be restrained unto the fitness of the matter and person." *Webster v. Morris*, 66 Wis. 395; *Lessee of Brewer v. Blougher*, 14 Pet. 198. When the ordinary meaning of the words employed leads to a manifest absurdity or repugnance, they may, if the instrument as a whole will permit it, be varied or modified so as to avoid such inconvenience, but no further. *Becke v. Smith*, 2 Mees. & W. 195; *Turner v. S. & R. R. Co.* 10 Mees. & W. 434. In the case at bar the contract must have a reasonable construction, and in view of the conditions so implied by law.

What is the object of giving such notice of the accident, injury, or death? In case of an injury or disability not resulting in death, such notice affords the association an opportunity to ascertain the exact condition of the person and apply the most effectual remedy. But in case of death there can be no remedy, and the only object of the notice is to secure evidence of identity. What is meant by giving notice "immediately after the accident occurs"? Does it mean, in the language of Webster: "In an immediate manner; without intervention of anything; . . . without interval of time; without delay; instantly"? If the contract is to be thus literally construed, compliance by the beneficiary would seldom be possible. But courts, looking at the substance of contracts and statutes, have, during the last two centuries, repeatedly declared that: "The word '*immediately*,' although in strictness it excludes all mean times, yet, to make good the deeds and intents of parties, it shall be construed *such convenient time as is reasonably requisite for doing the thing.*" 9 Am. & Eng. Ency. of Law, 931, citing numerous English and American cases in support of the proposition. The same language is quoted approvingly by RYAN, C. J., speaking for the whole court, in construing the words "immediate delivery," as used in sec. 2310, R. S., in *Richardson v. End*, 43 Wis. 318.

*Stevens v. Breen,* 75 Wis. 599. Applying this rule to the case at bar, the word "immediately " must be construed to mean such convenient time as was reasonably requisite for doing the thing required. That is to say, upon the discovery of the death notice thereof was to be given in such convenient time as was reasonably requisite for doing so under the circumstances mentioned; and the proofs were to be furnished within the six months specified after such discovery. Besides, it is a maxim that the law does not require impossibilities. Thus, in the language of HENNEN, J., " where the event is of such a character that it cannot reasonably be supposed to have been in the contemplation of the contracting parties when the contract was made, they will not be held bound by general words which, though large enough to include, were not used with reference to the possibility of the particular contingency which afterwards happens." *Baily v. De Crespigny,* L. R. 4 Q. B. Cas. 185. To the same effect, *Taylor v. Caldwell,* 3 Best & S. 826; *Howell v. Coupland,* L. R. 9 Q. B. Cas. 462; *S. C.* on appeal, 1 Q. B. Div. 258; *Insurance Cos. v. Boykin,* 12 Wall. 433.

In the light of reason as well as the authorities, we must hold that the action was not barred by the stipulation in the contract.

*By the Court.*— The judgment of the circuit court is affirmed.