[Civ. No. 833.  First Appellate District.—November 23, 1910.]

M. S. BACIGALUPI and MARY GOTELLI, Administratrix, etc., Respondents, v. PHOENIX BUILDING AND CONSTRUCTION COMPANY, a Corporation, et al., Defendants; TITLE GUARANTY AND SURETY COMPANY, a Corporation, Appellant.

BUILDING CONTRACT—ACTION FOR BREACH—DAMAGES—SUFFICIENCY OF COMPLAINT.—A complaint against a building company and its surety to recover damages in the sum of $3,500 for breach of its contract to construct a building, which alleges that it failed and refused to build said building, but abandoned the work and left said building in an uncompleted condition and refused to continue under its contract, and "that the reasonable cost to complete said building over and in excess of the contract price was $3,300," and concludes with a prayer for judgment for damages in the sum of $3,500, states a sufficient cause of action as against a general demurrer.

ID.—CONSTRUCTION OF COMPLAINT—WORDS "SAID BUILDING."—The words "said building," as used in the complaint, fairly mean the building as contracted for and not any other building.

ID.—FACTS SUSTAINING JUDGMENT—PRAYER FOR DAMAGES.—Where the
facts stated in the complaint would sustain a judgment for damages,
the demand in the prayer of the complaint is a sufficient state-
ment of the amount of damages sustained.

ID.—SPECIAL DEMURRER FOR UNCERTAINTY—FAILURE TO REFER TO ORIG-
INAL PLANS AND SPECIFICATIONS—ARGUMENT UPON APPEAL.—Al-
leged error in overruling a special demurrer for uncertainty of the
complaint in failing to allege that the building was completed ac-
cording to the original plans and specifications, or that the reason-
able cost of completing it in excess of the contract price was the cost
of completing it according to the original plans and specifications,
should be urged in the opening brief of appellant, and will not
otherwise be considered without urgent reasons for the omission.

ID.—ABSENCE OF REVERSIBLE ERROR—SUFFICIENCY OF PROOF—AVER-
MENT TREATED AS SUFFICIENT ON TRIAL.—There is no reversible error
in overruling the demurrer for uncertainty, where the evidence shows
that the building was completed according to the original plans and
specifications, and where the allegation as to the reasonable cost of
completing "said building" was treated in proof on the trial as an
allegation as to the reasonable cost of completing it according to
the original contract, and the jury so found.

ID.—SUFFICIENCY OF EVIDENCE—REASONABLE COST OF COMPLETION.—
Where plaintiffs proved that the actual cost of completing the
abandoned contract was $3,300 in excess of the original contract
price, that plaintiffs gave a contract to complete the work to the low-
est bidder, which brought the total to the sum of $3,300 in such
excess, and no evidence was given to show that the reasonable cost
of the completion of the building was less than such actual cost, or
that it could have been completed for any less amount, the evidence
was sufficient to prove the reasonable cost. The actual cost is evi-
dence of the value or reasonable cost, in the absence of any evidence
to the contrary.

ID.—MEASURE OF DAMAGES IN ORIGINAL CONTRACT—DELAY IN PERFORM-
ANCE—ABSENCE OF REFERENCE TO DAMAGES FOR ABANDONMENT.—A
measure of damages *per diem* for delay in performance beyond the
time fixed for completion has no bearing upon the measure of dam-
ages for an abandonment of the contract and failure to complete
the work at all.

ID.—ACTION NOT PREMATURELY BROUGHT.—The action for damages was
not prematurely brought because brought before the building was
completed. The cause of action accrued as soon as the building
company abandoned the contract.

ID.—RIGHT OF PLAINTIFF TO TREAT CONTRACT AS ABANDONED—ABSENCE
OF CONTENTION AT TRIAL—SUBMISSION OF ISSUE BY DEFENDANTS.—
Where there was no contention at the trial as to the fact that the
building company did abandon the contract, and the defendants con-
ceded such abandonment by submitting an issue as to when the

abandonment took place, which was specifically found, and the finding was not assailed, the right of the plaintiffs to treat the contract as abandoned and to complete the contract themselves was fully established.

ID.—CONSTRUCTION OF CONTRACT—"THREE DAYS' NOTICE"—FAILURE TO FURNISH MATERIALS OR MEN UNDER CONTRACT—ABANDONMENT NOT INCLUDED.—A provision in the contract that if the contractor during the progress of the work refuses or neglects to supply a sufficiency of materials or workmen to complete the work within the time limited for a period of more than three days after notice in writing from the owner to furnish the same, the owner may furnish the same to finish the contract, and the reasonable expense thereof shall be deducted from the contract price, only applies where the contractor is proceeding under the contract but fails to provide for its completion within the time limited, and has no application where the contractor entirely abandons the contract.

ID.—RIGHTS OF OWNER AFTER THREE DAYS' NOTICE.—The provision for three days' notice was intended to allow the owner, after giving such notice, under the circumstances provided for, to take the completion of the work into his own hands, and to deduct the cost from the contract price.

ID.—PAYMENTS UNDER CONTRACT—CERTIFICATES BY ARCHITECT—NONPROFESSIONAL ARCHITECT EMPLOYED BY OWNER.—Where the building company agreed to erect the building "in conformity with the plans and specifications of the same made by the authorized architect of the owner, and signed by the parties," and the contract provided that when payments shall become due "certificates in writing shall be obtained from said architect," the fact that the person referred to was not a professional architect, but was a builder employed by defendant to draw the "plans and specifications," is immaterial. It is sufficient that he was the only authorized architect employed by the owner, and his certificates were sufficient warrants for payments made under the contract.

ID.—PAYMENT "WHEN BUILDING INCLOSED" NOT PREMATURE—SURETY NOT RELEASED.—A payment to be made "when building is inclosed" is shown by a majority of the witnesses, including architects and builders, to mean "when roughly inclosed," and was not premature where the board roofing and siding of the house were done, though the tin roof was not on, and though the windows or sashes and doors were not in, and a payment thus made would not discharge the surety.

ID.—NOTICE OF DEFAULT OF BUILDER TO SURETY—REASONABLE TIME—LAPSE OF FOUR DAYS—EXPLANATORY FACTS—QUESTION FOR JURY.—The requirement of the bond that notice of the default of the builder shall promptly and immediately upon knowledge thereof be given to the surety is to be interpreted as requiring only that it shall be given within a reasonable time. Where it appears that four days

int rvened between the suspected cessation of work and the giving of the notice, but the explanatory facts were shown that without act al knowledge thereof and fruitless search for two days to interview the building company to ascertain their intentions, and after Sunday had intervened, notice was given to the surety on Monday, the court properly left it to the jury to determine whether the notice was within a reasonable time.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco and from an order denying a new trial.   John Hunt, Judge.

The facts are stated in the opinion of the court.

Wilson & Wilson, for Appellant.

Bacigalupi & Elkus, for Respondents.

HALL, J.—Plaintiffs entered into a contract with the Phoenix Building and Construction Company (which shall hereinafter be designated as the building company), for the construction of a building for the sum of $14,000. The Title Guaranty and Surety Company gave a bond to plaintiffs, in the sum of $3,500, as sureties for the performance of the contract by the building company. The building company did not complete said building or perform its contract, but abandoned the same. The plaintiffs brought this action against the building company and the surety company to recover damages in the sum of $3,500 for breach of the contract. The building company defaulted, but the surety company defended. The jury returned a verdict for plaintiffs for the sum of $3,300, for which judgment was entered.

1. Appellant's first contention is that the complaint fails to state a cause of action, and that for that reason the court erred in overruling its demurrer to the complaint.

The point of the attack made by the demurrer, as indicated in appellant's opening brief, is the alleged insufficiency of the allegation as to any damage caused plaintiffs by the failure of the building company to perform its contract.

The allegation of the complaint upon this point is as follows: "That the reasonable cost to complete said building, over and in excess of the contract price, was thirty-three hun-

dred ($3,300) dollars." The complaint also concludes with a prayer for judgment in the sum of $3,500.

It is urged that it does not appear that the building was ever completed according to the original plans and specifications, or that the reasonable cost to complete the building according to the original plans and specifications was $3,300, or any other sum.

So far as the attack by general demurrer is concerned, we think the allegation is sufficient. The words "said building" fairly mean the building as contracted for, and not a different building or building other than as contracted for. It clearly appears from the allegations of the complaint that the building company failed and refused to build *said* building, but that it abandoned the work and left the *said* building in an uncompleted condition, and refused to continue under its contract. The facts stated would sustain a judgment for damages, and in such a case it has been held that the demand in the prayer is a sufficient statement of the amount of damages sustained, as against a general demurrer (*Riser* v. *Walton,* 78 Cal. 490, [21 Pac. 362]). But however that may be, the most that can be said against the allegation of damage in the case at bar is that it is not as definite and certain as good pleading demands.

In this connection appellant in his reply brief calls attention to the fact that the allegation as to damage was attacked in the demurrer for uncertainty. It is perhaps sufficient to say that we are not called upon to notice points not presented by appellant in his opening brief, and only do so when cogent reasons are presented why the point was not made in the opening brief. Furthermore, in the case at bar the evidence showed that the building was in fact completed according to the original plans and specifications, and the jury specially found that the reasonable and necessary cost for so doing was $3,300. The appellant was thus not injured by the action of the court in overruling its demurrer for uncertainty. The allegation as to the reasonable cost of completing the "said building" was treated on the trial as an allegation as to the reasonable cost of completing the building according to the original contract, and the jury found $3,300 to be the reasonable and necessary cost of completing the building according

to the original contract. No reversible error was committed in overruling the demurrer.

2. Appellant's second contention is that "Plaintiffs failed to prove any loss or damage for failure of the building company to carry out its contract."

Under this head it is contended that although it was shown that the building was completed, it is not shown that it was completed in accordance with the original contract with the building company, and that though it was shown that it did in fact cost $3,300 more than the price fixed in the original contract to complete the building, it was not shown that this cost was a reasonable cost or price.

As to the first contention the evidence in the record does show that the building was completed in accordance with the original contract.

Plaintiffs did prove that the actual cost for completing the abandoned contract was $3,300 in excess of the original contract price; that plaintiff received bids for completing the work, and gave the contract to complete the work to the lowest bidder, which brought the total to a sum $3,300 in excess of the original contract price. No witness testified in terms that the accepted bid was a *reasonable* price or represented the reasonable cost of completing the abandoned contract; but no objection was made to this evidence. No evidence was given that the reasonable cost of completing the building was less than what it actually cost plaintiffs to complete it, or that it could have been completed for any less amount. Under the circumstances the evidence was sufficient to prove the reasonable cost. In the absence of any evidence to the contrary it tended to prove the reasonable cost. The actual cost is some evidence of the value or reasonable cost. (*Angell* v. *Hopkins,* 79 Cal. 181, [21 Pac. 769]; *Bunting* v. *Salz* (Cal.), 22 Pac. 1132; *Greenebaum* v. *Taylor,* 102 Cal. 624, [36 Pac. 957]; *Levy* v. *Scott,* 115 Cal. 39, [46 Pac. 892].)

The appellant also claims that the original contract fixes the measure of damages. The clause relied on provides that, "Should the contractor fail to complete this contract and the work provided for therein within the time fixed for such completion . . . he shall become liable to the owner for all loss and damages which the latter may suffer on account thereof, but not to exceed the sum of $5 per day for each

day said work shall remain uncompleted beyond such time for completion."

Manifestly this clause has relation only to damages resulting from delay only, and has no bearing upon the measure of damages for an abandonment of the contract and failure to complete the work at all.

3. The action was not prematurely brought because brought before the building was completed. The cause of action accrued as soon as the building company abandoned the contract. (*Taylor* v. *N. P. C. R. R. Co.*, 56 Cal. 317; *Lawton* v. *Fitchburg R. R. Co.*, 8 Cush. (Mass.) 230, [54 Am. Dec. 753]; *Cincinnati etc. Ry. Co.* v. *Village of Carthage*, 36 Ohio St. 631.)

4. Appellant also contends that "Plaintiffs had no right to consider the contract of the building company abandoned, and to complete the building themselves."

Under this head it is contended that the building company did not abandon its contract, and that by the terms of the contract with the building company it was entitled to three days' notice in writing to proceed before the contract could be treated as abandoned. That the contract was in fact abandoned by the building company is perfectly clear from the evidence. Indeed, appellants, in a special defense predicated upon the claim that the plaintiffs did not, as required by the surety contract, give appellant prompt or immediate notice of the default of the building company, pleaded that the building company "did make default in the performance of the terms, covenants and conditions of said contract, to wit, abandoned the performance of the said contract and failed to complete said building. . . ."

There was no real contention as to the fact that the building company did abandon the contract, and the appellant in effect conceded that the contract was abandoned when it asked, as it did, the court to submit to the jury the question, "On what date did the Phoenix Building and Construction Company abandon its contract with the plaintiffs and refuse to complete the contract?" This question was answered as follows: "February 14, 1907." Furthermore we find nothing in the specifications of the insufficiency of the evidence that hints at any failure of the evidence to support this answer.

The contention that the building company was entitled to three days' notice in writing is based upon the following provision of the contract, to wit: "Should the contractor, at any time during the progress of the work, refuse or neglect, without the fault of the owner, architect or superintendent, to supply a sufficiency of materials or workmen to complete the contract within the time limited herein, due allowance being made for the contingencies provided for herein, for a period of more than three days after having been notified by the owner in writing to furnish the same, the owner shall have power to furnish and provide said materials or workmen to finish said work, and the reasonable expense thereof shall be deducted from the contract price."

This paragraph has no application to the case where the contractor entirely abandons the contract, but only applies where he is proceeding under the contract, but fails to supply a sufficiency of materials or workmen to complete the contract within the time limited by the contract. It was intended to give the owner the right, under such circumstances and after giving the notice, to take the completion of the contract into his own hands, and to deduct the cost thereof from the contract price. This we think to be the meaning of the paragraph as between the owner and the contractor, and by which the surety was bound. Such an interpretation was placed upon a similar provision in a contract in *National Contracting Co.* v. *Hudson River Water Power Co.,* 118 App. Div. 665, [103 N. Y. Supp. 641]. We have no doubt it is the meaning of the paragraph in question in this contract.

5. Two payments were made by plaintiffs to the building company before it abandoned the contract. These payments were made upon the certificate of one Quagelli, who was not a professional architect, but was a contractor and builder. Appellant contends that under the contract these payments were unauthorized, as not made on the certificate of the architect. Quagelli, however, did make the plans and specifications for the building, and was employed and paid so to do by the plaintiffs, and, acting as such architect, superintended the construction of the building. The building company agreed to erect the building "in conformity with the plans and specifications for the same made by the authorized architect of the owner, and which are signed by the parties hereto,"

and the contract provided that when payments shall become due "certificates in writing shall be obtained from the said architect." The architect here referred to is the person who for the owner made the plans and specifications and superintended the construction of the building. He was the only "authorized architect of the owner," and was the "said architect" empowered to give certificates. The payments made by the plaintiffs were therefore not unauthorized payments for want of the architect's certificate. The contention that the certificates must be given by a professional architect is without merit.

6. The building contract provided that the second payment shall be made "when building is inclosed."

This payment was made before the tin roof was on, and before the windows or sashes, or doors, or door frames, were in. The board roofing was on and the siding to the house. Both parties without objection introduced evidence as to what is meant in a building contract by the word "inclosed." Not only was there a conflict upon this point, but a majority of the witnesses supported the contention of plaintiffs that it meant roughly inclosed. Anderson, a builder of many years' experience, testified that "The meaning of that word as applied to frame buildings is when the outside sheathing is on, whether it is rustic, sheath lath, or tongued and grooved or shingles, and the roof boarding is on, the rough boarding is on the roof." Architects and builders testified to the same effect. Under this theory as to the meaning of the word "inclosed" in a building contract, there is no doubt from the evidence but that the building was inclosed when the second payment was made.

The contention of the appellant that the second payment was prematurely made, because made before the building was "inclosed," cannot be sustained. The surety was therefore not released by reason of such payment.

7. The seventh and last question presented upon this appeal grows out of a provision of the surety bond providing that no liability shall attach to appellant for any default upon the part of the building company, unless the plaintiffs shall promptly and immediately upon knowledge thereof give written notice thereof to the appellant.

· On February 14, 1907, one of the plaintiffs learned that two carpenters had been suspended from working on the building, and on the same day went to the building and found no one at work. He then sought the architect, whom he succeeded in finding late in the day, and arranged with him to see the manager of the building company the next day. He went to the office of the manager of the building company in the morning and afternoon of the next day, but did not succeed in finding him. He tried again the next day, which was Saturday, to find the manager of the building company, but without success. Either on the 15th or 16th of February he advised with his attorney, and on Monday, the eighteenth day of February, by advice of their attorney, plaintiffs gave the required notice to appellants.

The court interpreted the provision of the contract, requiring plaintiff to promptly and immediately give written notice of default, to mean that such notice must be given within a reasonable time, and he left it to the jury to determine whether or not such notice had been given within a reasonable time. The jury answered in the affirmative.

The correctness of the interpretation of the contract as to giving notice of default is presented by various rulings, to wit, the order denying the motion for a nonsuit, the refusal to give an instruction to the effect that if plaintiffs had knowledge of the default on February 14th, and did not give notice until February 18th, the verdict should be for defendant, and the substitution of a question as to whether or not the notice was given within a reasonable time, in place of one framed in the language of the bond.

If the requirement of the bond that notice of default be promptly and immediately given is satisfied by notice given within a reasonable time, the action of the court in these various rulings was correct.

That the interpretation placed upon the clause of the bond in question was correct is supported by the great weight of authority. That the requirement in surety bonds, and in insurance contracts, that notice of default or of loss shall be given promptly and immediately means only that it must be given within a reasonable time, is sustained by the following cases: *Fidelity & Deposit Co.* v. *Courtney,* 186 U. S. 342, [22

14 Cal. App.—41

Sup. Ct. Rep. 833, 46 L. Ed. 1193]; *Remington* v. *Fidelity & Deposit Co.*, 27 Wash. 429, [67 Pac. 989]; *Fidelity & Deposit Co.* v. *Courtney*, 103 Fed. 599, [43 C. C. A. 331]; *People's Mut. Accident Assn.* v. *Smith*, 126 Pa. 317, [12 Am. St. Rep. 870, 17 Atl. 605]; *Van Buren* v. *American Surety Co.*, 137 Iowa, 490, [126 Am. St. Rep. 290, 115 N. W. 24]; *Kentlzer* v. *American Mutual Assn.*, 88 Wis. 589, [43 Am. St. Rep. 934, 60 N. W. 1002]; *Solomon* v. *Continental Fire Ins. Co.*, 160 N. Y. 595, [73 Am. St. Rep. 707, 55 N. E. 279, 46 L. R. A. 682]; *Lyon* v. *Railway Passenger Assur. Co.*, 46 Iowa, 631; *Niagara Fire Ins. Co.* v. *Scammon*, 100 Ill. 644; *Ward* v. *Maryland Casualty Co.*, 71 N. H. 262, [93 Am. St. Rep. 514, 51 Atl. 900].

The cases of *Fidelity & Deposit Co.* v. *Courtney*, 103 Fed. 599, [43 C. C. A. 331], and 186 U. S. 342, [22 Sup. Ct. Rep. 833, 46 L. Ed. 1193], and *Remington* v. *Fidelity & Deposit Co.*, 27 Wash. 429, [67 Pac. 989], both arose out of a clause in a surety bond, and are in all respects identical with the case at bar.

The judgment and order are affirmed.

Cooper, P. J., and Kerrigan, J., concurred.