**MASON et al. v. CONTINENTAL SUPPLY CO.**

No. 13698—Opinion Filed March 25, 1924.

Rehearing Denied April 22, 1924.

**1. Damages—Stipulated Damages—Breach of Contract.**

Where a contract expressly provides stipulated or liquidated damages for a particular breach of the contract, and the breach alleged is not the one provided for or contemplated in fixing the measure of damages, the loss, if any, sustained by plaintiff because of the breach of the contract should be determined, not by the stipulation contained in the contract, but by the law.

**2. Same—Oil and Gas—Total Abandonment of Drilling Contract.**

Where liquidated damages are stipulated for to compensate for failure to complete a certain oil well within 21 months under a contract which contained other provisions capable of being breached, such liquidated damages may not be applicable where there is a total abandonment and repudiation of the entire contract, when it is apparent that the parties in stipulating for liquidated damages did not contemplate such total abandonment and repudiation, but only a failure to complete the well within the specified time.

**3. Same—Chattel Mortgage to Secure Liquidated Damages—Liability Against Attaching Creditor.**

A valid chattel mortgage does not arise as against creditors of the mortgagor holding claims enforcible by attachment against the property of the mortgagor, so as to deprive such creditors of an attachment lien upon such property obtained thereon under the statute law of Oklahoma, where the debt or obligation which such mortgage attempts to secure is liquidated damages, agreed to be paid by the mortgagor to the mortgagee for the nonperformance of a contract by the mortgagor for the completion of an oil well within 21 months from the date of the contract, on certain lands which the mortgagor and mortgagee by virtue of a joint adventure for their mutual profit are engaged in developing for oil and gas, and where the property covered by said mortgage is the identical property purchased by the mortgagor and delivered to him from any such creditor for use in the joint enterprise.

**4. Same—Judgment Sustained.**

Record examined, and held, that the judgment of the trial court is not contrary to law and is reasonably supported by the evidence in the case.

(Syllabus by Foster, C.)

Commissioners' Opinion, Division No. 5.

Error from District Court, Washita County; Thomas A. Edwards, Judge.

Acton by Continental Supply Company against Tamaqua Oil Company, and George Mason, J. R. Simmons, and E. J. Weichel, interveners. Judgment for plaintiff, and interveners appeal. Affirmed.

Massingale & Duff, for plaintiffs in error.

Ash & Jones, for defendants in error.

Opinion by FOSTER, C. This action was commenced in the district court of Washita county, Okla., on the 15th day of February,

1921, by the Continental Supply Company, a corporation, defendant in error, plaintiff below, against the Tamaqua Oil Company, a corporation, to recover the sum of $10,789.99 for and on account of goods, wares, and merchandise sold and delivered to the Tamaqua Oil Company at its special instance and request. At the same time the Continental Supply Company caused an attachment to be levied upon certain personal property of the Tamaqua Oil Company, consisting of oil well machinery, tools, supplies, and equipment, and prayed that its attachment be sustained and foreclosed, and the property sold and applied on its debt.

Pending a determination of the issues between the Continental Supply Company and the Tamaqua Oil Company, George Mason, J. R. Simmons, and E. J. Weichel intervened in the cause, and set up title to the personal property levied upon under said attachment under a certain chattel mortgage executed to them by the Tamaqua Oil Company, bearing date of June 12, 1920.

The Tamaqua Oil Company suffered a default judgment to be rendered against it for the amount sued for by the Continental Supply Company, sustaining the attachment and ordering the property seized under the attachment sold to apply on the judgment of the Continental Supply Company against it.

Thereafter the controversy proceeded between the plaintiff below, Continental Supply Company, and George Mason, J. R. Simmons, and E. J. Weichel, interveners, who will be referred to hereafter in this opinion as plaintiff and interveners, as they appeared in the trial court.

The admitted facts are that the Tamaqua Oil Company, through its agent, Harry A. Darby, on the 19th day of May, 1920, entered into a contract with interveners whereby interveners were to secure oil and gas mining leases covering some 15,000 acres of land in Washita county, Okla., out of which the Tamaqua Oil Company was to select and have assigned to it 10,000 acres, and the remaining leases up to 15,000 acres were to be retained by the interveners, but in the event more than 15,000 acres were procured, the excess acreage was to be divided between interveners, and the Tamaqua Oil Company as follows, one-third to the interveners, and two thirds to the Tamaqua Oil Company.

The Tamaqua Oil Company further agreed in consideration of the assignment to it of the said 10,000 acres of leases to commence the drilling of an oil well on some part of the 10,000 acres to be selected by it within 90 days from the date of the assignment to it of said 10,000 acres, and prosecute the drilling thereof to a depth of 3,500 feet, unless oil or gas in paying quantities should be found at a lesser depth, and to complete the drilling of said well within 18 months from its commencement.

Pursuant to said contract and on the 24th day of June, 1920, 10,000 acres of said leases were selected by the Tamaqua Oil Company and duly assigned to it by the interveners the interveners retaining all of the acreage obtained by them and not assigned to the Tamaqua Oil Company, and located in the vicinity of the 10,000 acres assigned, upon which the well should be drilled.

The contract referred to, among other things, contained the following paragraph:

"To guarantee the faithful performance of this contract to drill the said Harry A. Darby, upon delivery to him by said George Mason, J. R. Simmons and E. J. Weichel, of said 10,000 acres of leases, above provided for, agrees to deliver to the said George Mason, J. R. Simmons and E. J. Weichel, a surety bond in the sum of $10,000, conditioned for the payment to them of said sum of $10,000, upon the failure of the said Harry A. Darby, to drill and complete said well within the time and according to the terms and provisions of this contract, said $10,000 being agreed upon as liquidated damages suffered by said George Mason, J. R. Simmons, and E. J. Weichel, in event of failure of first party to perform this contract."

After the execution of the contract it developed that the Tamaqua Oil Company was unable to give the bond provided for, and it was agreed orally between interveners and Tamaqua Oil Company in lieu of said bond that it should execute its note for $10,000 and secure the same by a chattel mortgage upon the property in controversy in this suit, and in pursuance of such oral understanding such note and mortgage, bearing date of June 12, 1920, was executed and delivered to the interveners and filed for record in the office of the county clerk of Washita county, Okla., on November 15, 1920. The said note is as follows:

"$10,000.00, Pittsburgh, Pa., May 10th, 1920.

"Twenty-one months after date undersigned promised to pay to the order of Geo. Mason, J. R. Simmons & E. J. Weichel, ten thousand and 00-100 dollars at Oklahoma State Bank of Cordell, Washita county, Oklahoma, without defalcation, for value received on condition.

"The Tamaqua Oil Company of Pittsburgh.

"Henry J. Meyer, President.

"B. F. Smith, Treasurer."

The following indorsement appeared on the back of the note, to wit:

"The within note, secured by chattel mortgage, is given to secure the terms and conditions of a certain agreement between Harry A. Darby of Pittsburgh, Pa., and the payees hereof for the completing of a test well on certain acreage in Washita county, Oklahoma, within 21 months from date hereof, and is payable only on default under said agreement by said Darby or his assigns."

The chattel mortgage, among other things, contained the following language:

"This chattel mortgage being given to secure a note to the sum of ten thousand ($10,000.00) dollars due twenty-one months after May 19th, 1920, which note is conditional as per contract of May 19th, 1920, between parties of the second part and Harry A. Darby of Pittsburgh, Pa."

Upon the consummation of the contract between the Tamaqua Oil Company and interveners, the Tamaqua Oil Company took no steps toward the drilling of the test well provided for in its contract, except to stake off a location and dig a small pit or cellar, and soon thereafter wholly abandoned the enterprise.

On the 11th day of March, 1920, the Tamaqua Oil Company ordered from plaintiff a considerable quantity of oil well machinery, tools, supplies, and equipment which was shipped by plaintiff from its distributing point in Texas and delivered to Tamaqua Oil Company in Washita county, Okla., on April 15, 1920, and during said month of April the Tamaqua Oil Company placed another order with plaintiff for a quantity of oil casing, which was shipped by plaintiff on the 12th day of June thereafter, and delivered to defendant in Washita county, Okla., on the 30th day of June, and these were the chattels which the plaintiff afterward seized under its attachment and sold to apply on its claim.

The interveners by their amended petition in intervention set up their contract with the Tamaqua Oil Company, alleged that they had a first lien upon the attached property by reason of the chattel mortgage given to them by the Tamaqua Oil Company as surety for the sum of $10,000, liquidated damages agreed upon in the contract to be paid to them in the event default was made in the drilling of a test well under a term of said contract; that default had been made in said contract; that their chattel mortgage had been filed prior to the time of the levy of plaintiff's attachment, and prayed judgment establishing said mortgage as a first prior lien on the attached property.

The agency of Harry A. Darby for the Tamaqua Oil Company stands admitted by the reply of the plaintiff, and upon the issues joined by the reply thus filed the cause proceeded to trial. A jury was waived and the court rendered a general judgment in favor of the plaintiff, upholding its attachment and holding invalid the lien of the interveners under their chattel mortgage. Motion for a new trial was filed and overruled and interveners bring the cause regularly on appeal to this court upon petition in error and case-made.

At the beginning of the trial, the following stipulation was entered into:

"All of the tools in controversy in this case, to wit: (the tools being the same tools described in the verified statement attached to the plaintiff's petition) were ordered from the Continental Supply Company on the 11th day of March, 1920, and were delivered in Washita county, Oklahoma, on the fifteenth day of April, 1920, and the casing in question, to wit: (this being the same casing described in the verified account), was ordered from the Continental Supply Company in April, 1920, and arrived in Weatherford over the railroad and was checked out on the thirtieth day of June, 1920, and was within a few days thereafter removed from Weatherford and delivered in Washita county, Oklahoma, to the Tamaqua Oil Company.

"Let both of these stipulations show that this stuff was delivered to the Tamaqua Oil Company."

There is no material conflict in the evidence introduced, same being substantially as hereinbefore set out in the statement of facts. It is earnestly contended, however, that the court failed to draw from the evidence a correct legal conclusion in holding that the chattel mortgage of interveners was not a valid lien upon the personal property in controversy, and in sustaining the attachment of plaintiff against said property. Was the lien secured by the interveners by their chattel mortgage a valid lien?

While it is provided in paragraph three of the contract referred to that the $10,-000 therein agreed to be paid upon failure of Tamaqua Oil Company to drill and complete the well within the 21 months was designated as liquidated damages, this pro-

vision standing alone would not be conclusive when from an examination of the terms and conditions of the entire paragraph taken and construed together in the light of the entire contract and in the light of the surrounding circumstances, a different conclusion might be reached.

The language employed, namely, "To guarantee the faithful performance of this contract to drill", would indicate to our minds that the parties intended that the giving of the bond for the payment of $10,000 should operate as security for the performance of the contract, rather than a stipulation for liquidated damages to be paid in lieu of performance.

And it has been held that the amount fixed in the bond will be regarded a penalty in a proper case, even though it is expressly provided in the bond that the sum had been fixed as liquidated damages. See City of El Reno v. Cullinane et al., 4 Okla. 457, 46 Pac. 510.

Interveners insist, however, that it has been agreed in this case that it is practically impossible on account of the speculative character of the enterprise to determine the amount of compensation to which interveners would be entitled upon breach by the Tamaqua Oil Company of the contract, and that in this situation equity will not interfere, and they cite the case of McAlester v. Williams, 77 Okla. 65, 186 Pac. 461.

Under our statutes the right to stipulate in advance for the amount to be paid on a breach of a contract is expressly limited to cases where from the nature of the transaction it would be extremely difficult to fix the actual damages.

It is perhaps true that in a proper case this provision of contract might be upheld as liquidated damages, but it is equally well settled that where the contract provides for the payment of a stipulated amount of damages for a particular breach, as in this case, and the breach from which it is claimed the right to enforce the penalty arises, is not the particular breach provided for in the contract, but arises from a total abandonment and repudiation of the entire contract, the injured party is limited to his actual damages.

In Moses v. Autuone (Fla.) 47 South. 925, 20 L. R. A. (N. S.) 350, it is said in paragraphs one and six of the syllabus:

"1. Where a contract expressly provides stipulated or liquidated damages for a particular breach of the contract, and the breach alleged is not the one provided for or contemplated in fixing the measure of damages, the loss, if any, sustained by the plaintiff because of the alleged breach of the contract, should be determined, not by the stipulation contained in the contract, but by the law.

"6. Where liquidated damages are stipulated for to compensate for failure to complete a contract, such liquidated damages may not be applicable where there is a refusal to perform any part of the contract, when it is apparent that the parties, in stipulating for liquidated damages, did not contemplate such refusal, but only a failure to complete the contract within a specified time."

See, also, note 1916E. L. R. A. 1179, citing Bocigalupi v. Phoenix Building & Construction Co. (Cal.) 112 Pac. 892; Garey v. Pasco (Wash.) 145 Pac. 433; Moore v. Board of Regents (Mo.) 115 S. W. 6; Shields v. Shields Construction Co. (N. J. Eq.) 86 Atl. 958.

In the instant case the particular breach from which it is claimed the right to enforce the penalty arises was not a breach of the particular stipulation requiring the drilling and completion of the well within 21 months, but a total abandonment and repudiation of the entire contract. Such being the case, it would follow that interveners would be limited to their actual damages, and that the difficulty of ascertaining these damages would be immaterial.

A still more serious question is presented when we come to consider the effect of the mortgage, note, and contract of interveners upon the rights of third parties and particularly upon the rights of creditors of the Tamaqua Oil Company whose claims are enforceable by statutory attachment against the property of the Tamaqua Oil Company.

The relationship established between interveners and Tamaqua Oil Company by the execution of the contract, note, and mortgage in controversy is quite unusual. The fact that they were joint adventurers in a speculative enterprise for the drilling for oil and gas is not of itself unusual, but the execution of a chattel mortgage by one coadventurer to indemnify another coadventurer against loss from a breach of their contract is, we think, rather uncommon. A bond to guarantee the payment of liquidated damages for the nonperformance of the contract, enforceable by an ordinary action at law, rather than the execution of a lien upon specific chattels foreclosable only in equity, would seem to be the usual and or-

dinary manner of indemnification in cases of this kind.

Notwithstanding the novel and unusual nature of the engagement, however, it is perhaps true that such a mortgage would be enforceable in equity as against the mortgagee, and such seems to be the holding of our court in the case of McAlester v. Williams, supra, if the contract is otherwise unobjectionable as not providing for a penalty. But the McAlester-Williams Case was a case in which no right of an attachment creditor was involved, nor was it a case where the parties to the transaction occupied the peculiar relationship of joint adventurers as was sustained by the parties here.

In the instant case the security offered interveners for the performance of the contract by its coadventurer was property which, while in the possession of the Tamaqua Oil Company, had not been paid for, and which was hypothecated to interveners under circumstances, to our minds at least, which put them on notice of the financial insecurity of the Tamaqua Oil Company, and upon notice of the strong possibility that the specific chattels which were mortgaged to them had not been paid for.

It goes without saying that if the Tamaqua Oil Company had followed the usual practice of giving a personal indemnity bond, guaranteeing its performance of the contract, the plaintiff in this case could not have been prejudiced thereby in the collection of its claim for the purchase money of the identical chattels which it had sold and delivered to the Tamaqua Oil Company.

We do not say that in the instant case the evidence disclosed any corrupt or fraudulent conspiracy between interveners and the Tamaqua Oil Company against the plaintiff to deprive it of its remedy by attachment for the enforcement of its claim for purchase price of the chattels mortgaged to interveners, but we do say that to uphold the mortgage under the circumstances disclosed by the record in this case would open the door to fraud and collusion between joint adventurers to deprive innocent third parties, extending credit in good faith to individual members of the joint enterprise, of rights afforded them under the statute law of this state to enforce their claims by attachment.

We therefore hold that the payment of the debt or obligation which the Tamaqua Oil Company attempted to secure by the mortgage it executed to the interveners as

against the plaintiff, Continental Supply Company, was not such a debt or obligation as could be secured in this manner, and that as against plaintiff such mortgage is wholly void.

We are therefore of the opinion that the trial court did not err in its conclusion of law and in its general judgment that the mortgage of the interveners was void, and in sustaining the attachment of the plaintiff.

For the reasons stated in the opinion, the judgment of the trial court should be affirmed.

By the Court: It is so ordered.