[Civ. No. 4952. First Appellate District, Division Two.—May 27, 1925.]

## HORTENSE S. TROY, Respondent, v. ROBERT P. TROY, Appellant.

[1] PROMISSORY NOTES—ACTION TO RECOVER MONEY—OWNERSHIP— PLEADING.—In an action to recover from defendant a specified sum of money, it is not essential that there be incorporated in the complaint an allegation that plaintiff is the owner and holder of the indebtedness, where the whole theory of plaintiff's case is that she claims to have loaned defendant the money and that at the time of the loan, or about that time, a writing evidencing the loan was executed by defendant to plaintiff, and neither in the complaint nor in the proof as introduced at the trial is there any suggestion of assignment or transfer by plaintiff of any of her rights.

[2] ID.—DUE DATE—INCONSISTENT ALLEGATIONS—AMENDMENT TO CON-FORM TO PROOF—STATUTE OF LIMITATIONS.—Conceding there is an inconsistency between an obligation which is payable in a reason-able time and one which is payable in three months, such incon-sistency is not a legal objection to an allowance of an application to amend to conform to the proof, but is a circumstance to be con-sidered by the trial court after the submission of the whole cause for the purpose of determining the rights of the parties; and where the trial court determines that the writing provided that it was payable "on or before ninety days from and after" a specified date, the trial court is correct in holding that an action based upon such writing, commenced within four years from said date, is not barred by the statute of limitations.

[3] ID. — CROSS-COMPLAINT FOR SERVICES — ABSENCE OF EXPRESS CON-
TRACT—QUANTUM MERUIT—PLEADING—EVIDENCE.—In this action
to recover certain moneys alleged to have been loaned by plaintiff
to defendant, in which the latter cross-complained for a balance
alleged to be due for services performed by him for plaintiff dur-
ing a specified period of time (during the major portion of which
plaintiff and defendant were living together as man and wife),
and in which he claimed that the amount sought to be recovered
by plaintiff was a payment by her to him on account of such ser-
vices, conceding that there were some contradictions in the evidence,
the trial court was clearly correct in holding that the preponderance
of the showing was to the effect that the defendant did not hold
any express contract in a specified sum per year, as alleged by
him, or any other sum; and the trial court did not err in failing
to make a finding as to the reasonable value of defendant's services
where the pleadings on which the trial was had did not present
the issue.

[4] ID. — FINDINGS — CONCLUSION OF LAW — JUDGMENT—APPEAL.—In
such action, the judgment in favor of plaintiff will not be reversed
on appeal because of a finding referring to a writing "evidencing"
something where, conceding such finding to be a conclusion of law,
the other findings support the judgment.

[5] ID.—REASONS FOR CONCLUSIONS—APPEAL.—In such action, notwith-
standing the trial judge, in ruling the case, writes a memorandum
for the guidance of counsel in preparing findings, and such memo-
randum is inserted in the bill of exceptions on appeal, the appellate
court will concern itself only with the conclusions of the trial
judge, and not go into the subject of whether the reasons assigned
by the trial judge are correct or incorrect.

[6] ID.—IRREGULARITIES PREVENTING FAIR TRIAL—APPEAL—RECORD.—
Alleged irregularities preventing the complaining party from having
a fair trial, based upon the asking of "leading questions involving
misconduct and reversible error," cannot be presented by affidavit
showing the alleged occurrences, but such matters must be embodied
in the bill of exceptions, made up from the reporter's notes showing
the occurrence, the objection, and the exception.

[7] ID. — IMPEACHMENT — LEADING QUESTIONS.—Where the defendant
takes the stand in his own behalf and, after testifying in support
of the allegations of his cross-complaint, he is interrogated with
reference to certain conversations had at certain specified times and
places, and at which certain named persons were present, in which
he made statements in conflict with the testimony on direct exami-
nation, which statements he denies, it is no sound objection that
leading questions in impeachment are propounded to the persons
present at such conversations.

6.   See 2 Cal. Jur. 529.

[8] ID.—INTEREST—EVIDENCE—AMENDED PLEADING.—In an action to recover a sum of money alleged to have been loaned by plaintiff to defendant, it is not reversible error to refuse to strike out plaintiff's testimony to the effect that the loan carried interest at a certain rate where, although the complaint on which the parties go to trial does not allege that the loan bore interest, the court permits plaintiff to amend her complaint to so allege, in conformity with her proof.

[9] ID.—PRIOR ACTIONS—PLEA IN BAR.—The fact that plaintiff instituted an action against defendant for an accounting was no bar to her action to recover a specified sum of money claimed to have been loaned by her to defendant, where the former action was dismissed on motion of the defendant prior to the trial of the latter action; neither was the action to recover said sum of money barred by a prior divorce action between plaintiff and defendant, in which plaintiff pleaded, as one of her grounds of cruelty, the borrowing by defendant from plaintiff of numerous sums of money, which were not repaid, no mention of said specific sum having been made in the pleadings or findings, and no judgment having been asked for or entered to the effect that defendant was indebted to plaintiff in said sum.

[10] ID.—FINANCIAL TRANSACTIONS—MEMORANDUM-BOOK—EVIDENCE.—Where the plaintiff, while on the stand giving testimony regarding financial transactions between herself and defendant, testified that she kept a memorandum-book, which she produced, but did not offer in evidence, and, on cross-examination, defendant propounded to her many questions attempting to prove the fact that the memorandum-book had been recently manufactured by the witness and that the items therein were not entered as of the date that the transaction occurred, on redirect examination of plaintiff the trial court did not commit error in permitting the introduction of the memorandum-book in evidence to show that it was not manufactured as claimed.

[11] ID.—MISCONDUCT OF COUNSEL—IMPROPER RECORD.—Alleged prejudicial error, predicated upon misconduct of counsel for plaintiff in the trial of the case, based upon occurrences claimed to have taken place in the courtroom when the regular reporter was present and as the trial proceedings were being had, should be based upon a bill of exceptions, and not upon affidavits made by the defendant and presented to the trial court on his motion for a new trial.

[12] ID.—TRIAL BY COURT—IMPROPER ARGUMENT—REFERENCE TO REJECTED EVIDENCE.—Where the record on appeal does not show

9. Application of doctrine of *res judicata* to issue as to which former judgment is silent, note, 6 **Ann. Cas.** 104. See, also, 15 **R. C. L.** 978; 15 **Cal. Jur.** 128, 148.

whether any objection was made by defendant to the act of plain-
tiff's counsel, during the arguments, in referring to the stub of the
check-book from which plaintiff took the check she made out in
favor of defendant, after defendant's objection to the introduction
of the stub-book in evidence had been sustained, or what relief, if
any, was asked for by defendant, it does not appear that any error
was committed, or if error was committed, that the error was in
the least prejudicial.

[13] ID.—TRIAL BY OUTSIDE JUDGE—PRESUMPTION OF REGULARITY.—
Where the record on appeal shows that a judge from another
county presided at the trial, it will be presumed, in the absence
of any competent legal evidence to the contrary, that judicial
duty has been regularly performed and that the local judge re-
quested said outside judge to sit in the case, or that the Gov-
ernor requested said outside judge to attend the local court, or
an extra session thereof, and hear the case there pending.

[14] ID.—MOTION FOR NEW TRIAL—JURISDICTION OF JUDGE TO HEAR—
WAIVER OF OBJECTION.—The objection on appeal that the trial
judge who heard the motion for a new trial had no jurisdiction to
hear the motion is waived where such objection is not presented in
the opening brief of appellant. (Opinion on denial of rehearing.)

[15] ID.—OFFERS OF EVIDENCE—SUGGESTIONS OF FACT—ASSUMPTION OF
PREJUDICE.—Where a case is tried before a court, sitting without a
jury, it will not be assumed on appeal that the trial court allowed
its mind to be prejudiced by suggestions of fact contained in offers
of proof to which objections were sustained. (Opinion on denial
of rehearing.)

---

(1) 8 C. J., p. 885, n. 38; 13 C. J., p. 730, n. 80.   (2) 4 C. J.,
p. 886, n. 43 New; 30 C. J., p. 1031, n. 72 New; 37 C. J., p. 760,
n. 76; 31 Cyc., p. 371, n. 23 New, p. 372, n. 71, 72, p. 401, n. 93,
(3) 30 C. J., p. 1028, n. 32 New; 38 Cyc., p. 1969, n. 1.   (4) 38
Cyc., p. 1964, n. 83.   (5) 4 C. J., p. 554, n. 37.   (6) 4 C. J.,
p. 226, n. 60, p. 243, n. 92.   (7) 40 Cyc., p. 2752, n. 25.   (8) 4 C. J.,
p. 1002, n. 41.   (9) 3 C. J., p. 1412, n. 54, p. 1413, n. 56, p. 1420,
n. 21 New; 27 C. J., p. 727, n. 53; 34 C. J., p. 785, n. 66, p. 847, n. 70,
p. 893, n. 12.   (10) 40 Cyc., p. 2529, n. 39.   (11) 4 C. J., p. 558,
n. 54; 38 Cyc., p. 1509, n. 12.   (12) 3 C. J., p. 862, n. 21.   (13) 4
C. J., p. 740, n. 3.   (14) 3 C. J., p. 1412, n. 54, p. 1434, n. 32; 4
C. J., p. 226, n. 58, p. 241, n. 75, p. 558, n. 54.   (15) 4 C. J., p. 775,
n. 30 New.

APPEAL from a judgment of the Superior Court of the
City and County of San Francisco. Emmet Seawell, Judge.
Affirmed.

The facts are stated in the opinion of the court.

Robert P. Troy, *in pro. per.,* and H. H. McPike for Appellant.

Francis J. Heney, John D. Rutledge and W. S. White for Respondent.

STURTEVANT, J.—This is an appeal by the defendant from a judgment rendered against him in an action commenced by the plaintiff to recover $17,000 alleged to have been loaned by the plaintiff to the defendant. The appellant has brought up the judgment-roll and a bill of exceptions—a record consisting of 1,500 pages. The appellant has filed three briefs and the respondent has filed three. Those facts will account for the length of this opinion.

In the original complaint, and likewise in the amended complaint, the plaintiff alleged that "On April 11, 1913, defendant herein borrowed from plaintiff herein, and plaintiff herein loaned to defendant herein, the sum of $17,000; and on said date defendant herein promised in writing to repay said sum of $17,000 to said plaintiff. . . . " In the original and amended complaints the above language was followed with the phrase "within a reasonable time after said April 11, 1913." During the trial and after the plaintiff's evidence had been introduced, the trial court allowed the plaintiff to strike out the phrase last quoted and to insert in lieu thereof, "on or before ninety (90) days from and after the said 11th day of April, 1913, with interest thereon at the rate of 6½% per annum." In the original and amended complaints the second paragraph was, "That a reasonable time for repayment of said sum, after said April 11, 1913, has elapsed." In the same order last above mentioned, the trial court authorized the plaintiff to strike out those words and to insert in lieu thereof, "that defendant has paid the said interest thereon up to and including the 31st day of December 1915, but has not paid said interest, or any part thereof, since the said 31st day of December, 1915, and said interest is now due, owing and unpaid from defendant to plaintiff."

[1] The appellant makes the attack that the plaintiff's complaint does not allege that she is the owner and holder. Neither in the complaint nor in the proof as introduced at

the trial was there any suggestion of assignment or transfer by the plaintiff of any of her rights. The whole theory of the plaintiff's case was that she claimed to have loaned the defendant money and that at the time of the loan, or about that time, a writing evidencing the loan was executed by the defendant to the plaintiff. Under such facts it was not necessary that the allegations referred to should have been incorporated in the complaint. (8 C. J. 885, sec. 1158; *Pryce* v. *Jordan*, 69 Cal. 569 [11 Pac. 185].)

[2] The appellant also complains because the trial court allowed the amendment mentioned above. An examination of the testimony given by the plaintiff discloses that the amendments but conform to the proof. A mere comparison of the allegations contained in the original complaint and the allegations contained in the complaint as finally amended is a sufficient refutation of the statement that any of the amendments changed or purported to change the cause of action. Conceding that there is an inconsistency between an obligation which is payable in a reasonable time and one which is payable in three months, such inconsistency was not a legal objection to an allowance of an application to amend, but was a circumstance to be considered by the trial court after the submission of the whole cause for the purpose of determining the rights of the parties. Having determined that the writing executed contained the statement that it was payable "on or before ninety days from and after the 11th day of April, 1913," it is clear that the trial court was correct in holding that an action commenced on the tenth day of April, 1917, was not barred by the statute of limitations. (Code Civ. Proc., sec. 337.)

The action was commenced in the city and county of San Francisco at a time when the plaintiff was at Los Angeles. The plaintiff's son, W. S. White, an attorney at law, called upon and stated certain facts to T. M. O'Connor and William A. Kelly, both attorneys at law, and employed them to commence the action. During the presentation of the plaintiff's case she called as a witness Mr. W. S. White for the purpose of showing that the variance between the allegations of the original complaint and the sworn testimony given by the plaintiff while on the stand arose by reason of a want of information by the agents of the plaintiff as to the facts and not by reason of inconsistent statements of the

plaintiff. Over numerous objections he was allowed to testify
regarding the facts as he had stated them to Mr. O'Connor.
In that behalf the witness testified as follows: "At that time
I told Mr. O'Connor something about whether the note
bore interest or what rate of interest. I told him that the
note bore interest and as to the rate of interest I was not
certain. I told him that I had a conversation with my
mother both concerning the interest and the maturity of the
note. I told him that I had a conversation, several conversa-
tions, with Mrs. Troy relative to the principal and maturity
of this note, and as to both the maturity and the amount of
interest I was not certain. And also I stated I was not
certain as to how much interest had been paid on the note.
I told him I was not certain because I had forgotten it.
It was in the office of O'Connor and Kelly that the attach-
ment suit was prepared. I was present when the word
'interest' was stricken out of the writ of attachment. We
did not know just how much interest had been paid on the
note and therefore we could not allege the amount in the
complaint; consequently we could not make an affidavit
upon which the sheriff could have a writ of attachment;
so in order to be certain and have a proper attachment
for $17,000, we struck out the amount of interest, because
it was an uncertainty involved." Conceding that Mr.
White's testimony was hearsay, it is patent that the state-
ments did not purport to include any testimony to the effect
that the $17,000 was a loan, or that the loan had not been
repaid. Furthermore, for the purpose of showing that the
plaintiff should not be estopped by the allegations of her
pleadings, the testimony was not objectionable. The ap-
pellant did not ask the trial court to limit the testimony and
there is nothing contained in the record showing that the
trial court used the testimony for any purpose other than
that for which it was proper to use it.

When the plaintiff commenced the presentation of her case
she took the stand and testified in support of the allegations
contained in her complaint. Thereafter she was cross-ex-
amined. She gave sworn testimony sustaining every allega-
tion contained in her complaint. True it is that there are
some inconsistencies and contradictions in her testimony,
but they went merely to the weight of her testimony and
the weighing of the testimony was a function of the trial

court which this court may not disturb unless there was an abuse of discretion. In this instance we are not in the least inclined to hold that there was an abuse of discretion. The plaintiff testified that she paid the defendant the money and that it was a loan. The defendant later admitted receiving the money, but claimed that it was not a loan. The plaintiff claimed that the defendant executed to her on the next day a promissory note reciting the facts alleged in her complaint as finally amended. That later he brought the note to her at their house and after he had read it he induced her to let him have the custody of the paper; that she did so; and that thereafter the defendant never returned the paper to her. All of these facts it may be conceded were contradicted by the defendant, but the conflicts in the evidence were wholly for the trial court. The defendant cites numerous passages and argues that the showing made by the plaintiff is inherently improbable. We cannot so hold.

[3] The defendant interposed a pleading marked cross-complaint and counterclaim. Therein he pleaded that from the tenth day of January, 1904, to the twenty-eighth day of October, 1916, he acted as the manager and attorney at law of the plaintiff; that he so acted under an express agreement that his compensation should be $5,000 per annum. He alleged that he received on March 27, 1913, $17,000 from the plaintiff and that there remained due and owing to him the sum of $32,000. Throughout the trial of the case it was therefore the contention of the defendant that, although he received from the plaintiff the said sum of $17,000, he did not receive it as a loan. In this connection it is pertinent to note that the plaintiff and defendant intermarried July 22, 1904, and they lived together as man and wife until the latter part of the year 1915, when they separated. The defendant devotes a great deal of time and space to show that he was employed by and performed services for the plaintiff and that his cross-complaint and counterclaim, therefore, should have been sustained by the trial court. If the mere fact of a husband rendering services to his wife constituted a cause of action there might be something in the appellant's contention; however, respondent argued it was her claim that any services rendered by the defendant for the plaintiff were rendered gratuitously and not otherwise, and that there was no connection whatever

between the rendition of services by the defendant and the payment by the plaintiff of $17,000 to the defendant. In support of that contention the trial court found the facts as claimed by the respondent. Conceding that there may be some contradictions in the evidence, it is clear from an inspection of the record that the trial court was clearly correct in holding that the preponderance of the showing was to the effect that the defendant did not hold any express contract in the sum of $5,000 or any other sum. In this connection the defendant complains because the trial court did not make a finding as to the reasonable value of the defendant's services, but it is a sufficient reply to that contention that the pleadings on which the trial was had did not present the issue. In so far as there was anything purporting to be an allegation of a promise to pay the defendant "reasonable compensation," the trial court found the fact against the appellant in finding number 14.

[4] Many attacks are made on the findings and we have noted the most of them above. The first finding purports to reply to the allegations contained in paragraph 1 and paragraph 2 of plaintiff's complaint as finally amended; however, it contains some words not responsive to the allegations mentioned. It refers to the writing "evidencing" something. The defendant claims that language is a conclusion of law. Conceding that it is, the contention reaches nowhere. The other findings sufficiently support the judgment.

[5] In ruling the case the learned judge who presided at the trial wrote a memorandum for the guidance of counsel in preparing findings. The defendant caused the memorandum to be inserted in the bill of exceptions and thereafter in his brief the defendant proceeded to dissect the memorandum and now asks this court to express its opinion as to whether the reasons assigned by the trial judge are correct or incorrect; however, this court is merely concerned with the conclusions of the trial judge and not with his reasons. In the interest of time this court will not, therefore, go further into that subject.

[6] In his motion for a new trial the defendant included all of the statutory grounds including "irregularity in the proceedings of the court, jury, or adverse party . . . by which either party was prevented from having a fair trial."

In support of his motion based on the ground last stated, the defendant cites passages contained in an affidavit that is printed in the bill of exceptions, folios 3918 to 4406. As to any irregularities of the court, or of the adverse party, or of the attorneys for the adverse party, that did not occur in the courtroom, it is patent that the proper method of presenting them is by affidavit. (Code Civ. Proc., sec. 658.) However, as to any irregularities which occurred in the courtroom it is equally patent that the bill of exceptions, made up from the reporter's notes showing the occurrence, the objection, and the exception, is the proper embodiment of such matters. (*Gay* v. *Torrence,* 145 Cal. 144 [78 Pac. 540].) In this connection appellant complains regarding "leading questions involving misconduct and reversible errors" but the facts presenting this alleged error are contained in the affidavit above mentioned and are not set forth in the bill of exceptions.

[7] The plaintiff had rested her case. The defendant had introduced the greater part of his case. Among other things, he had taken the stand and had been examined and cross-examined at great length. As one of the witnesses for the defense, the defendant took the stand and testified in support of the allegations of his pleadings. On cross-examination one of the attorneys for the plaintiff called to the attention of the witness a certain date in the year 1905, at 1776 Bush Street, San Francisco, and a conversation alleged to have been held between the witness and the plaintiff in the presence of Miss Hortense White and William S. White, no one else being present, and thereupon counsel asked the witness if at the time mentioned he had a conversation with the persons named in which the question of putting Mrs. Troy's property in a trust was discussed. The witness neither affirmed nor denied, but made an answer in the nature of an explanation. Thereupon other questions regarding the same subject were propounded, some of which were answered in the negative. Almost immediately thereafter similar proceedings were had regarding a conversation between the witness and Mr. W. S. White in the month of April, 1913, while riding in an automobile in the vicinity of the residence of Abe Ruef, in which conversation it was claimed the witness had said in substance that for anything he might do for his wife he would not think of charging one

cent because she was his wife. The witness answered the question in the negative. Thereafter the plaintiff called W. S. White as a witness and propounded substantially the same questions to him. Over the objection of the appellant that the question was leading, the court allowed the witness W. S. White to answer the questions. That questions in impeachment are leading is not a sound objection.

[8] During the progress of the trial, after the plaintiff had rested her case, the defendant moved that all of the testimony of the plaintiff be stricken out because in the original complaint and the amended complaint she alleged that the note in question was payable in a reasonable time and because she had not alleged that the same bore interest, whereas the plaintiff had introduced evidence to the effect that the note was payable in ninety days and that it carried interest at the rate of six and one-half per cent. As we have shown in another part of this opinion, permission was asked and granted allowing the plaintiff to amend her pleading to conform to the proof. Counsel has not quoted passages from the record informing us as to whether the amendments were made before or after the motion to strike out was made. Assuming in support of the appellant's point that the amendments were made subsequently, the irregularity was not so grave as to constitute a reversible error.

Immediately thereafter the appellant moved for a nonsuit on the ground that the action was barred by the statute of limitations. If the trial court accepted the testimony of the plaintiff as being true, and on the hearing of a motion for a nonsuit the trial court was bound to so accept it, it is quite clear that the attack as made was not well founded. The motion was based on the further ground that there was no proof that the alleged obligation was ever delivered and that there was no proof of a contract. For the same reasons the motion was not well founded. The motion was also based upon the same variance that the motion to strike out was based upon. The same reasoning that demonstrates that it was not a reversible error to deny the motion to strike out is equally applicable to the ruling of the trial court denying the motion for a nonsuit. [9] The motion for a nonsuit was also based on the claim that another action, No. 85258, which was an action commenced by the same plaintiff against the same defendant to obtain a decree in

accounting, was a bar to the case on trial. The record shows that the action last mentioned was dismissed on motion of the defendant November 1, 1920, several months before the trial of this action commenced. That action having been dismissed, the order of dismissal was not a bar to this action. Neither does the fact that action 85258 was commenced and was pending for a while support the contention of the defendant that the plaintiff split, or attempted to split, her cause of action. The motion was also based on the ground that a divorce action was commenced by the plaintiff against the defendant, action known as No. 85872, and that the judgment therein was a bar. In that action the plaintiff alleged as an act of cruelty that the defendant borrowed from the plaintiff numerous sums of money and thereafter did not repay them. The $17,000 alleged loan was not specified in the allegations nor findings. In the divorce action no judgment was asked or entered to the effect that the defendant was indebted or was not indebted to the plaintiff in the sum of $17,000. The judgment in the divorce case was no bar in this. We do not find the trial court committed error in denying the motion for a nonsuit. While speaking of the divorce action it may be noted at this time that the defendant admitted that the judgment-roll in the divorce action did not show the judgment in that case to be a bar, and he sought to introduce evidence to prove that nevertheless in the divorce action evidence was introduced of and concerning the $17,000 claim. The evidence was objected to and excluded. The fact, if it be a fact, that in the divorce case the parties introduced evidence without the issues made by the pleadings would not strengthen the defendant's contention in this case.

The defendant asked permission to amend his answer by inserting allegations therein that the plaintiff committed a fraudulent act by deeding away her property without consideration prior to the commencement of this action for the purpose of defrauding the defendant out of any sum that might be awarded against her. The application was made on the further ground that shortly before she commenced this action she did, by false assurances of her love and affection, cause him to make her a gift of property of the value of $25,000. As the defendant had not at the time the motion was made obtained any judgment against the plaintiff, he

was not in a position to complain regarding the disposition she had made of her separate property. As to when the defendant asked permission to allege plaintiff's misconduct regarding the obtaining of a fraudulent gift of $25,000, as to what the contents of the proposed pleading were, and as to the procedure followed by the defendant, he has not called any part of the record to our attention so that we can be informed thereon. We are not called upon to search such a lengthy record for material that may or may not support such a contention.

[10] While the plaintiff was on the stand giving testimony regarding financial transactions between herself and the defendant, she testified that she kept a memorandum-book, which she produced, but did not offer in evidence. On cross-examination the defendant propounded to her many questions attempting to prove the fact that the memorandum-book had been recently manufactured by the witness and that the items therein were not entered as of the date that the transaction occurred. Thereafter on redirect examination the plaintiff offered the memorandum-book as a piece of evidence to show that it was not manufactured as claimed. Over the objection of the defendant the trial court admitted the book in evidence and in doing so it committed no error.

[11] The defendant makes numerous points to the effect that the attorney for the plaintiff was guilty of misconduct in the trial of the case. These acts of misconduct, each and all, are claimed to have occurred in the courtroom when the reporter was present and as the trial proceedings were being had. Although a bill of exceptions of many hundred pages is before us, no passage is cited which it is claimed shows any of the facts excepting passages contained in an affidavit made by the defendant and presented to the trial court on his motion for a new trial. We do not understand that such is the proper practice. (*Gay* v. *Torrence, supra.*) Furthermore, in the trial of an action before the court when no jury is present it is not at all clear what word of mouth on the part of opposing counsel could or would constitute reversible error on appeal; nor what procedure would support the point. However, be that as it may, the record before us certainly does not show any fact or facts in this connection which would constitute reversible error. These

matters are set forth in the record, transcript pages 1310–1429, inclusive. No one of the assignments justifies special consideration in this opinion.

[12] On the trial of the case, when the plaintiff was on the stand as a witness, the check for $17,000 drawn in favor of the defendant was exhibited to her and she testified regarding filling in the blanks on the check and filling in the blanks on the stub-book. Later she offered the check in evidence, but did not offer the entries on the stub-book. Still later, during the trial, she offered in evidence the entries made on the stub-book. The offer was objected to and the objection was sustained. During the arguments it is claimed that the plaintiff's attorney went outside of the record and argued that the entries on the stub-book should have been received in evidence. It does not appear from the record whether an objection was made that the argument was outside of the record or what relief, if any, was asked for. It does not appear, therefore, that any error was committed, or if error was committed, that the error was in the least prejudicial.

On the same kind of a record the defendant assigns certain acts as being misconduct on the part of the court. We have read the entire record. There is nothing in any one of the assignments.

[13] The defendant makes several points to the effect that the judge who presided at the trial had no authority to so preside. For some time prior to the date of the trial Judge Murasky was presiding in department two of the superior court in and for the city and county of San Francisco. That was the court in which the action was heard and determined. During the same time Judge Shortall was presiding judge in the city and county of San Francisco. During the same time Judge Seawell was one of the duly elected, qualified, and acting judges of Sonoma County. The foregoing matters are matters of which this court probably will take judicial notice. The bill of exceptions, the judgment, and the findings each and all show that Judge Seawell presided at the trial. In his brief the defendant makes several statements of fact. Statements of fact should properly be contained in the bill of exceptions and be quoted or cited if necessary in the briefs. The bill of exceptions contains, among other things, the affidavit of Robert P. Troy made to

be used in support of his motion for a new trial. Except as contained in that affidavit as so embodied in the bill of exceptions, the record is silent as to how Judge Seawell happened to preside at the trial. The statements contained in that affidavit are each and all statements that purport to have been made to the affiant by (1) Judge Murasky, (2) Judge Shortall, (3) Judge Seawell, and (4) perhaps some others. Some of those statements were made by one of the judges speaking to the affiant in the absence of plaintiff's counsel and some of the statements purport to have been made in the presence of the defendant and plaintiff's counsel. The affidavit contains many expressions on information and belief. The affidavit was not answered by any counter-affidavit on behalf of the plaintiff, nor any counter-affidavit in support of the judicial act of any one of the judges above named. In the absence of any competent legal evidence to the contrary, it will be presumed that judicial duty has been regularly performed. As Judge Murasky had the legal power to invite Judge Seawell to come to San Francisco and sit in his department, in support of the judgment it will be presumed that he made the request. As the Governor had the right to request Judge Seawell to attend at any court and hear a case there pending, in the absence of evidence to the contrary it will be presumed in support of the judgment that the Governor made the request. As extra sessions of the superior court may legally be held, in the absence of any evidence to the contrary, in support of the judgment it will be presumed that Judge Seawell was regularly called to San Francisco to hold an extra session of said superior court. Finally, as Judge Shortall was a judge of the superior court, he had the power to reassign any of the cases and to take the cases, if necessary, into his own department, and in the absence of any evidence to the contrary, it will be presumed in support of the judgment that he did so and caused the court to be presided over by Judge Seawell at his request. Moreover, it will not be disputed that the superior court had jurisdiction of the parties and that the superior court had jurisdiction of the subject matter of the action. Conceding, for the sake of argument, that if any irregularity existed in the authenticity of the request made to have Judge Seawell try the case, then and in that event such irregularity constituted an error; still there

is not a word in the record showing, or tending to show, that the error, if it be an error, was in any respect prejudicial.

We find no error in the record.  The judgment is affirmed.

Nourse, J., and Langdon, P. J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on June 25, 1925, and the following opinion then rendered thereon:

THE COURT.—The appellant has filed a petition for a. rehearing.  [14]  The point that the trial judge who heard the motion for a new trial had no jurisdiction to hear the motion was not presented in the opening brief of the appellant and it was therefore waived.  (*Hihn* v. *Courtis*, 31 Cal. 398; *Webber* v. *Clark*, 74 Cal. 11, 13 [15 Pac. 431]; *Bacigalupi* v. *Phoenix Bldg. etc. Co.*, 14 Cal. App. 632 [112 Pac. 892].)

In the opinion heretofore filed a paragraph on pages 6 and 7 is devoted to a consideration of the claim of the appellant that certain misconduct on the part of the plaintiff's attorney occurred during the trial which constituted prejudicial error and the court adverts to the fact that if such matters were contained in the bill of exceptions, the location of the objectionable matters was not stated in the appellant's opening brief.  We repeat the statement.  It was also stated by the court that the acts and conduct of counsel in presenting evidence, the objections thereto, and the rulings thereon, should be contained in the bill of exceptions and not in affidavits if an appellant would have the same considered by the court.  The appellant also questions the correctness of that statement, but we are not inclined to depart therefrom.  No misconduct occurring outside of the court-room, nor occurring at a time when the court was not actually in session, is charged in any form or manner.  But, if we concede for the purpose of argument that the record correctly sets forth the point, still the ruling must be the same.  [15]  The full measure of the appellant's point is that the plaintiff's attorney made an offer to prove that the appellant did, without any authority, sign the plaintiff's name to a mortgage written for the sum of $75,000; and that

the offer was made at a time when the defendant was presenting his defense and when it would have been irregular for the plaintiff to introduce any evidence; and that the offer was repeated several times. But the offer was not accepted. The proof was not made and the matter then stands thus: Will it be assumed on appeal that the trial judge, sitting without a jury in the trial of a civil action, allowed his mind to be prejudiced by the suggestions of fact contained in questions or offers of proof to which objections were sustained? It is patent that such is not the rule.

The last point made reiterates the contention that the trial court erred in refusing the appellant permission to file a cross-complaint asking that gifts of the alleged value of $25,000 should be canceled on the ground that they were obtained by reason of false representations. Our former opinion fully covered the subject.

A rehearing is denied.

Appellant's petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on July 23, 1925.

All the Justices concurred, except Seawell, J., and Houser, J., *pro tem.,* who, deeming themselves disqualified, did not participate.