[Civ. No. 3256.   Third Appellate District.—June 29, 1927.]

NED LICHT, Appellant, v. MALVENA GALLATIN et al., Respondents.

Downey, Downey & Seymour, George A. Work and Thomas Ashby for Appellant.

White, Miller, Needham & Harber for Respondents.

FINCH, P. J.—The trial court sustained the defendants' demurrer to the third amended complaint without leave to amend and judgment was thereupon entered in favor of defendants. The plaintiff has appealed from the judgment.

The following facts are alleged in said complaint: June 5, 1918, defendant Gallatin leased to George Manoles, for a term of five years, a three-story brick building in the city of Sacramento. By the terms of the lease Manoles agreed "not to let or underlet the whole or any part of said premises . . . without the written consent" of the lessor. June 21, 1918, Manoles leased a part of the ground floor of the building to the plaintiff for the full term of the lease first mentioned, subject to "all of the conditions" of the latter. Plaintiff immediately went into possession under the sub-

lease and thereafter, until March 20, 1921, he "conducted the business of a new and second hand clothing, jewelry, and sundry dealer on said premises." February 8, 1921, the city commissioner of public health and safety served on defendants a document, signed by him as such commissioner, containing the following: "The undersigned, through the building inspector and the chief of the fire department of the city of Sacramento has inspected the premises at #201 J street, city of Sacramento, and deems the building on said premises insecure and unsafe to life and surrounding property and that said building is liable to endanger surrounding property by fire and is not sufficiently protected from danger by fire. Said building is hereby condemned and you are hereby ordered to tear down and remove the same immediately." On the same day the defendant Carly, acting as the agent of defendant Gallatin, appealed from the order of the commissioner to the city commission and "asked exemption from condemnation the first story of the building." On the same day the city commission made an order, by the terms of which "the condemnation was made effective as to the second and third stories of said building; that the said appeal was sustained as to the first story thereof, with the proviso that if upon the removal of the second and third stories of said building, the first story should be found to be dangerous, that it should be removed; that according to the proceedings before said board on said day relating to said appeal, said first story was to be left in its then status until the second and third stories should be removed; that one of the purposes of ordering the removal of the second and third stories was to have the condition of the first story ascertained; that said order has never been revoked, modified or set aside." February 14, 1921, the city commissioner of public health and safety served on plaintiff a writing, signed by the commissioner and addressed to the plaintiff and the defendants and Manoles, reading as follows:

"You are hereby notified that the building (of which you are the owner) or (which is occupied by you) described as that certain three-story building, No. 201 J Street, . . . has been condemned by the building inspector of the city of Sacramento and has been ordered torn down by the commissioner of public health and safety, and you are further

notified to tear down and remove said building within ten days after the service of this notice."

At that time "the said order of the commission . . . was in full force and effect." "There had been no change in the condition of the said building . . . between the time at which the said order of the commission was made and the time at which the notice" of February 14th was served. On the same day the defendants erected scaffolding preparatory to the demolition of the building and on the 16th of March, 1921, they had completed the removal of the second and third stories. March 18, 1921, "the defendants commenced the demolition of the first story of said building." March 19, 1921, plaintiff served on Carly, as agent of defendant Gallatin, a written notice, stating that the plaintiff, "in vacating the premises . . . is not abandoning said lease, but expressly claiming right as lessee under said lease. And you are further notified that demand is made that repairs and particularly roof and structural repairs be made on said property . . . so as to avoid condemnation of the lower story property, and to maintain said property leased in condition for occupancy." March 20, 1921, "the plaintiff was compelled to vacate and did vacate the premises." The demolition of the first story of the building was completed July 15, 1921. "Said first story was, during all of the times mentioned herein, safe and in good condition." "No order for the condemnation of said first story was made. . . . Said first story was never condemned, and . . . the destruction thereof was wrongful and made with the express intent of compelling plaintiff to vacate said premises . . . and for the purpose of depriving him of possession thereof." The commissioner of public health and safety "was without authority to give or have given said notice" of February 14th "or make any order with reference to said building except such as might be necessary to effectuate the order of the commission." A new building was subsequently erected upon the site of the demolished building and "leased to other parties." The plaintiff "has at all times mentioned herein been able, ready and willing to perform the conditions of his said lease and has offered so to do. . . . The defendants have refused and still refuse to deliver possession of said premises . . . to plaintiff and have denied and now deny his right to the

possession thereof.'' Appropriate allegations of damage are made, followed by a prayer for the amount thereof. The ordinance under which the building was condemned provides:

"Section 1. Whenever the commissioner of public health and safety, through the building inspector or the chief of the fire department of the city of Sacramento shall deem any buildings, walls, chimneys, stacks or other structures within the limits of the city of Sacramento, to be insecure or unsafe, in any manner, to life or surrounding property, or that has been partially destroyed by fire or is liable to endanger surrounding property by fire or is not sufficiently protected from danger by fire, the commissioner of public health and safety shall notify the owner, agent, or person in possession thereof and order that the same be torn down and removed within ten days after the receipt of such notice of condemnation. . . .

"Section 2. The owner, agent or person in possession shall have a right to appeal to the city commission from the order of condemnation made within ten days after the service of notice of condemnation. The city commission, upon notice of appeal being presented to it, shall set a date for the hearing of the matter and shall finally determine the course to be followed. If the action of the commissioner of public health and safety . . . be affirmed by the city commission, the owner, agent or person in possession must within five days; after the decision of the city commission has been rendered, commence in good faith to tear down and remove said building . . . or other structures and must complete such removal within twenty days thereafter.

"Section 3. Upon the refusal or neglect of the owner, agent, or person in possession . . . to comply with any lawful order given under and by virtue of the provisions of this ordinance relative to the abatement or removal of said building . . . or other structure, then the commissioner of public health and safety shall proceed to tear down and remove such building . . . or other structures. All expenditures so incurred shall be charged against the owner and shall be a lien upon the lot which said building . . . or other structure is situated.''

The defendants demurred to the complaint on the ground that the facts stated therein are insufficient to constitute a

cause of action, and on many special grounds. No attempt is made by the respondents to justify the order sustaining the demurrer on any special ground, and as there appears to be no merit in any of such special grounds it is deemed unnecessary to discuss them. The question then is whether the complaint states a cause of action. There is no allegation therein that the lessor consented to the subletting.

"It seems to be the law that where there is a clause in a lease that it shall not be assigned without the previous consent of the lessor, and there is a breach of the covenant not to assign, the lessor has only the option to forfeit the lease for the breach of the condition and that the assignment is not void but passes the term, and the only remedy is for breach of the covenant." (*Garcia* v. *Gunn,* 119 Cal. 315, 318 [51 Pac. 684]; *Potts Drug Co.* v. *Benedict,* 156 Cal. 322, 327 [25 L. R. A. (N. S.) 609, 104 Pac. 432].)

Covenants against subletting are to be strictly construed against the lessor. (*Harrelson* v. *Miller & Lux, Inc.,* 182 Cal. 408, 413 [188 Pac. 800].) "Under a lease requiring the lessor's consent to subletting, a subtenancy in the absence of any showing to the contrary, will be presumed to have been created with his consent." (15 Cal. Jur. 766; *Stevenson Brothers Co.* v. *Robertson,* 21 Cal. App. 224, 227 [131 Pac. 326].) It is to be presumed that the alleged sublease was valid rather than invalid. (*Alaska Salmon Co.* v. *Standard Box Co.,* 158 Cal. 567, 569 [112 Pac. 454]; *Henke* v. *Eureka Endowment Assn.,* 100 Cal. 429, 432 [34 Pac. 1089].)

In respondents' brief it is said: "There is no allegation in the complaint that Manoles has performed any of the terms of his lease. There is no allegation in the complaint that the lease to Manoles was in force at any time subsequent to its execution. . . . There is no allegation that the plaintiff Licht performed even the covenants of his sublease from Manoles."

It was not necessary for the plaintiff to allege the performance of conditions subsequent or to anticipate and negative any defense which may be available to the defendants. (*Arnold* v. *American Ins. Co.,* 148 Cal. 660, 668 [25 L. R. A. (N. S.) 6, 84 Pac. 182].) *Spencer* v. *Commercial Co.,* 30 Wash. 520 [71 Pac. 53], was "an action by a tenant against his landlord for damages on account of an

alleged wrongful eviction." The complaint therein contained no allegation of performance by the plaintiff and the defendant's demurrer thereto was sustained. In reversing the case the court said: "When the complaint alleges the execution of the lease and possession thereunder, and facts showing a wrongful eviction and damages, a cause of action is stated. The facts showing forfeiture or voluntary surrender, or any other matter of that kind, are proper to be set up in the answer."

Respondents say that "no presumption of continuance of Manoles' lease arises from pleading that at one time Manoles had a leasehold estate. . . . The presumption of continuance is applicable to evidence only and not to pleadings." *Fredericks* v. *Tracy*, 98 Cal. 658 [33 Pac. 750], and *McCaughey* v. *Schuette*, 117 Cal. 223 [59 Am. St. Rep. 176, 46 Pac. 666, 48 Pac. 1088], are cited in support of respondents' contention. The former case was an action in claim and delivery and the latter was an action to recover possession of real property. In *Curtin* v. *Kowalsky*, 145 Cal. 431, 432 [78 Pac. 962], an action by the assignee of a judgment to recover the amount due thereon, the court said: "It was not necessary for the complaint to state that the plaintiff was the owner or holder of the judgment. Such ownership and holding was the legal result of the assignment, and that fact having been alleged, it follows as a matter of law that plaintiff thereby became the owner and holder thereof. This condition of ownership is presumed to continue and it was not necessary to allege that plaintiff was the owner at the time the action was begun. Such an allegation, or its equivalent, is required in actions to recover the possession of specific property, but not in actions to recover on money demands." See, also, *Pryce* v. *Jordan*, 69 Cal. 569, 571 [11 Pac. 185]; *Troy* v. *Troy*, 72 Cal. App. 757, 761 [238 Pac. 143]; *Hooper* v. *Smith*, 30 Cal. App. 460, 462 [158 Pac. 556]; *Rock Ridge Park Co.* v. *Wells*, 27 Cal. App. 281, 283 [149 Pac. 792]. *Williams* v. *Ashe*, 111 Cal. 180, 188 [43 Pac. 595], was an action in claim and delivery. The plaintiff therein alleged that "on and after the seventeenth day of November, 1892, he was the owner and in possession of the property." It was contended that this allegation was not sufficient to show ownership at the time of the commencement of the action. The court said: "It was insufficient against a special demurrer, doubtless, but

defendant did not demur at all. . . . It was not obnoxious to a general demurrer, for, however imperfectly pleaded, there is still by fair intendment to be gathered from the complaint that he claimed ownership and right of possession at the time of the commencement of his action.'' The facts necessary to constitute a cause of action in this case may, ''by fair intendment,'' be gathered from the complaint. ''Pleadings are no longer to be strictly construed against the pleader, but are to be liberally construed with a view to promoting justice. (Code Civ. Proc., sec. 452.)'' (*Burian* v. *Los Angeles Cafe Co.,* 173 Cal. 625, 627 [161 Pac. 4].)

■ It fairly appears from the complaint that the defendants had prosecuted a successful appeal from the first order of condemnation made by the commissioner, in so far as it applied to the first story of the building; that the commissioner was without authority to make the second order, the order of the city commissioner never having been ''revoked, modified or set aside''; that the first story of the building was at all times ''safe and in good condition,'' and that ''no order for the condemnation of said first story was made, and that said first story was never condemned''; and that the destruction thereof by the defendants ''was wrongful and made with the express intent of compelling plaintiff to vacate said premises . . . and for the purpose of depriving him of possession thereof.'' It seems clear that the complaint states a cause of action for damages.

■ Appellant contends that the ordinance under which the building was condemned is unconstitutional. It is not deemed advisable to determine that question unnecessarily on this appeal. While a demurrer admits the truth of the facts alleged in a complaint for the purpose of determining the sufficiency of the complaint, such facts are not admitted for any other purpose, and the defendants may be able to deny the alleged terms of the ordinance or to show that other terms thereof cure the alleged defects therein. It would probably lead to confusion, therefore, to pass upon the constitutionality of the ordinance without a full presentation of the terms thereof.

The judgment is reversed and the trial court is directed to overrule the demurrer.

Hart, J., and Plummer, J., concurred.