[Civ. No. 22074. Second Dist., Div. Two. Mar. 1, 1957.]

JOHN H. WARE et al., Respondents, v. GUY N. STAFFORD, Appellant.

Guy N. Stafford, in pro. per., for Appellant.

R. R. Colby for Respondents.

MOORE, P. J.—This appeal is from a judgment cancelling an oil lease previously granted to appellant and quieting title of the lands in respondents.

■ The lease was executed April 15, 1948, covering lots 19, 20, 21, Block 18 of Athens in Los Angeles County. It obligated lessee to "undertake operations to clean out and place on production the abandoned well heretofore drilled on lot 19 or 20." After such well shall have been placed on production "he shall thereafter produce said well in conformity with good oilfield practice and the laws of . . . California. . . . In event production is obtained from said well and the lands, the duration of the leasehold shall be 20 years from and after the date hereof. . . . If no production is obtained from said well within a period of six months from the effective date of the permits" to clean out and place the abandoned well on production as required by the lease, "then this indenture shall terminate and all rights and obligations of the persons hereto shall cease and be at an end. . . ." Lessee was obligated to pay one-sixth royalty and was required to "keep a full and complete report of the production and the receipts thereof . . . for each calendar month's production. . . . In the event of a breach of any of the terms or provisions of this lease by the Lessee, before Lessor may terminate the lease for such reasons, he shall be obligated to serve a notice on Lessee, specifically stating the purported breach . . . and demand such breach be remedied. Upon failure of Lessee so to do within 60 days after receipt of such notice, this lease may be terminated at the election of Lessor by such notice, and thereupon all rights of the Lessee shall be at an end under the terms of this lease. This paragraph relates to breaches occurring after production is obtained. . . .

"All notices by the lessor to lessee shall be sent by registered mail addressed to 839½ West 83rd Street, Los Angeles 44, California. . . .

"Upon the termination of this lease for any reason, Lessee shall quietly and peaceably surrender possession of the lands and shall deliver a good and sufficient quitclaim to the recorder of Los Angeles County for recordation . . . and shall remove all his personal property from said lands, and thereupon all rights of the parties hereto shall cease as to this lease and all right of Lessee in or to said lands be at an end."

On September 19, 1953, respondents forwarded by registered mail to appellant a notice in writing that appellant had "failed to live up to the terms of the oil lease" and that they were "serving notice on you . . . that if these conditions are not corrected within 60 days that this lease is void and of no further effect."

On September 17, 1954, respondents forwarded to appellant at his address their notice that he "did not exercise reasonable diligence in efforts to place the said well . . . on production . . . did not produce from said well or any other in connection with the lease in conformity with good oil-field practice . . . as required by the terms of said lease; but wholly failed to do so.

"That no production has been obtained by you from said well or from any other on said lease as per the terms thereof, to prevent the termination thereof."

This notice was accompanied by two demands, to wit, (1) a demand that appellant "place said well on production in conformity with good oil-field practice and the laws" of California "on or before December 1, 1954; and notice is hereby given that, unless you do so, the . . . Lessor hereby elects and hereby declares that by this notice the lease will be terminated, and all your rights thereunder shall be at an end as provided under the terms of the lease." (2) "(And in case of such termination of said lease, demand is hereby made that you comply with all the provisions as required in . . . said lease.)"

Appellant having failed to comply, respondents subsequently filed their complaint alleging that appellant had wholly failed to perform his agreement as required by the lease in that he had not exercised "reasonable diligence in his efforts to place said well on production" as required by the lease and never did place it or any other one on production; that no production was obtained from said well within six months; that no royalty was ever paid to or for the plaintiffs; that said lease has expired and defendant has no right thereunder; that by the terms of the lease the "indenture shall terminate and all rights and obligations of the persons hereto shall cease and be at an end." The plaintiffs were and still are the owners of Lots 19, 20, 21.

Appellant pleaded a general denial to both counts and alleged that an oral agreement had been entered into in May 1954 to the effect that the lease of April 15, 1948, was in good standing; that appellant had six months within which to place the oil well on steady production; that such oral agreement was reduced to writing but respondents did not sign it and did not comply with it.

Also, he pleaded that respondents were estopped under the terms of the oral agreement to claim that the oil lease had been terminated and that the commencement of this action was premature.

At the trial, the court heard all the relevant evidence offered by appellant, all his explanations and excuses and made findings in favor of respondents on all their allegations and against appellant that appellant had not acted with diligence in attempting to recover oil and gas from the leased lands, had not obtained production within a period of six months from the effective date of the permits to clean out and place the abandoned well on production and had not kept a full and complete report of the production or the receipts thereof, and also found all other allegations of the complaint to be true.

The court adjudged respondents to be owners of the leased lands and entitled to possession thereof; annulled the lease of April 15, 1948, and adjudged that appellant had no right, title or interest in such lands.

Appellant now contends that the court erred to his detriment in refusing to grant him judgment on the pleadings. Such ruling was correct. After the case had been tried, it was made clearly to appear that appellant had failed to comply with the terms of the lease, that respondents had performed all covenants on their part to be performed and had not prevented appellant from compliance with his obligations and they were not estopped to terminate the lease by anything they had done.

Appellant complains that his motion should have been granted because there was "no allegation that the defendant had not remedied the purported default, or that after failure to remedy, a forfeiture was declared, another condition precedent to suit and jurisdiction." ▮ It was not incumbent upon plaintiffs to allege that appellant had not remedied the breach. There was no way to remedy a breach except by waiver or by a supplemental agreement. Respondents did not waive the breaches of appellant and the court found that they did not make a new agreement, reinstating the lease after he had failed to perform as provided by that document.

▮ Respondents were not obliged to allege the performance of conditions subsequent or to anticipate and negate any defense which might have been available to appellant. (*Licht* v. *Gallatin*, 84 Cal.App. 240, 245 [257 P. 914]; *Arnold* v. *American Ins. Co.*, 148 Cal. 660, 668 [84 P. 182, 25 L.R.A. N.S. 6].)

Appellant contends that the findings and judgment are contrary to the evidence in that there was no evidence that respondents owned the lands they had leased; no evidence

that respondents still owned the property, no evidence that the lease had been terminated by notice and that appellant had not remedied the asserted default. Such contention is to assert an ignorance of the findings and the evidence supporting them. The breaches are meticulously alleged, notices thereof to appellant were twice served and his failure to comply with respondents' demand is as conspicuous as appellant himself. No lessee may deny the title of his lessor. The title respondents had at the time they signed the lease is presumed to have continued. (Code Civ. Proc., § 1963, subd. 32.)

Appellant contends that respondents made no proof of their claim that there was no production within the six-month period. Why not? The only semblance of production during that period was appellant's assertion that 30 barrels were "bailed out." But that was not *production* in the sense used in the lease. Production meant production as that term is used in oil-field practice which is paying or commercial production. The purpose of an oil and gas lease is to recover and save those hydrocarbon substances from the ground leased in such amounts as would pay royalties to the lessor and make profits for the lessee. Appellant makes no claim now that he ever recovered any such production. Finally, no notice of termination was actually necessary. At the end of the six-month period by reason of his failure to place the well on production, appellant became a tenant by sufferance. (*Moon* v. *Marker*, 26 Cal.App.2d 33, 37 [78 P.2d 460].) But, inasmuch as the parties have argued on the basis that notice to appellant was a necessary step to terminate his lease, we have shown that respondents' title was quieted by their pursuit of the notice method.

Appellant insists that the court erred in failing to find that the oral agreement suspended every condition of the lease until December 1, 1954. There was no oral agreement. A written lease cannot be defeated by mere talk. Appellant testified that John H. Ware stated that the lease would remain in good standing until December 1, 1954, but that gentleman testified that he did not so state, and the court adopted Mr. Ware's testimony.

Affirmed.

Fox, J., and Ashburn, J., concurred.

A petition for a rehearing was denied March 27, 1957, and appellant's petition for a hearing by the Supreme Court was denied April 25, 1957.